1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUISA ALVAREZ, | Case No.  1:20-cv-01207-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 29, 32, 33) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Luisa Alvarez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act, after remand of Plaintiff's initial appeal on February 24, 2017.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to the undersigned magistrate judge for all purposes.  (ECF Nos. 6, 11, 18, 19.)

1

1

## II.

2

### BACKGROUND[2]

3       Plaintiff filed an application for disability insurance benefits under Title II of the Social

4   Security Act on October 28, 2011, alleging disability beginning November 1, 2008, due to multi-

5   level degenerative disc disease, neck sarcoma, depression, gastritis, headaches, vision problems,

6   and arm weakness.   (Admin. Rec. ("AR") 19–20, 223–27, 250, 275, 285, 316, 358, 1091,

7   collectively ECF Nos. 21-1—21-28.)   Currently at issue are her allegations of disability due to

8   degenerative disc disease in the cervical, thoracic, and lumbar spine, obesity, and carpal tunnel

9   syndrome.  (See AR 1091; ECF No. 29-1 at 9.)

10       Plaintiff's claim was initially denied on May 8, 2012, and denied upon reconsideration on

11   January 4, 2013.   (See AR 77–130.)   On January 14, 2014, Plaintiff appeared before an

12   Administrative Law Judge for an administrative hearing.  (AR 34–76.)   The judge issued a

13   decision denying benefits on June 27, 2014.  (AR 11–33.)  On September 4, 2015, the Appeals

14   Council denied Plaintiff's request for review.  (AR 1–8.)  On November 6, 2015, Plaintiff filed

15   her first appeal of the decision of the Commissioner.   See Alvarez v. Comm'r of Soc. Sec.

16   (Alvarez I), No. 1:15-cv-01708-NONE-SAB (E.D. Cal. 2015).    In that appeal, Plaintiff

17   challenged the ALJ's decision on the bases that the ALJ failed to resolve an apparent conflict

18   between the VE's testimony and the DOT with respect to reaching; the ALJ erred by not

19   expressly addressing Plaintiff's illiteracy with the VE and in the RFC; the ALJ improperly

20   weighed the medical opinions of Drs. Vesali and Devireddy; and the ALJ improperly discounted

21   Plaintiff's testimony.  Alvarez I at ECF No. 17 (E.D. Cal. Jul. 25, 2016).  On February 24, 2017,

22   this Court issued an order partially granting Plaintiff's motion for summary judgment, partially

23   granting Defendant's cross-motion for summary judgment, and remanding the matter to the

24   agency for further proceedings consistent with its order.  (AR 1208–31); Alvarez I at ECF No. 19.

25   Specifically, the Court found the ALJ properly weighed and evaluated the medical evidence and

26   Plaintiff's testimony, but erred in failing to address Plaintiff's limitations with respect to

27

28

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

fingering/manipulative activities and overhead reaching with her right hand/arm, and Plaintiff's illiteracy in English.  Id.  Accordingly, the Court remanded Alvarez I to the Commissioner for further administrative proceedings.  Id.  On January 29, 2019, the Appeals Council issued an order vacating its prior final decision and remanding the matter for a new hearing and a new decision, consistent with this Court's order.  (AR 1237–42.)

Plaintiff supplemented her application on August 10, 2018.  (AR 1303–06.)  On February 27, 2020, Plaintiff appeared before Administrative Law Judge Scot Septer (the "ALJ") in Fresno, California, for an administrative hearing.  (AR 1122–59.)  On June 29, 2020, the ALJ issued a decision finding Plaintiff was not disabled from November 1, 2008 (the alleged onset date), through March 31, 2014 (the date last insured).  (AR 1083–1121.)

Plaintiff initiated the instant action in federal court on August 25, 2020, again seeking judicial review of the denial of her application for benefits.[3]  (ECF No. 1.)  The Commissioner lodged the operative administrative record on June 14, 2021.  (ECF No. 21.)  On November 1, 2021, Plaintiff filed an opening brief.  (ECF No. 29.)  On January 31, 2022, Defendant filed a brief in opposition.  (ECF No. 32.)  Plaintiff filed a reply brief on February 15, 2022.  (ECF No. 33.)

**III.**

**LEGAL STANDARD**

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential

---

[3] The Court additionally notes the District Judge in Alvarez I, assigned for the sole purpose of considering Plaintiff's request to relate cases, issued an order on September 29, 2020, granting the request to relate cases and relating Alvarez I with the instant matter.  See Alvarez I at ECF No. 26.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5]

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in

the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's

RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her]

limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).    The RFC must consider all of the claimant's impairments,

including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security

---

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE").  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

2   Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

3   the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

4   not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

5   scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

6   CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

7   citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

8   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

9   454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

10  falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

11  409 (2009).

12          Finally, "a reviewing court must consider the entire record as a whole and may not affirm

13  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

14  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

15  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

16  review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

17  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

18  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

19  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

20  the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

21  400 F.3d 676, 679 (9th Cir. 2005)).

22                                              **IV.**

23                                   **THE ALJ'S DECISION**

24          The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520(a).

25  (AR 1092–1113.)  At step one, the ALJ found Plaintiff last met the insured status requirements of

26  the Social Security Act on March 31, 2014,[7] and that she had not engaged in substantial gainful

27  ─────────────
    [7] A claimant must establish disability on or before the last date of disability insurance coverage in order to be entitled

28  to a period of disability and disability insurance benefits.  Here, the ALJ determined from Plaintiff's earnings records
    that she acquired sufficient quarters of coverage to remain insured through March 31, 2014; Plaintiff does not dispute

activity since that date.  (AR 1091 (citing 20 C.F.R. §§ 404.1520(b), 404.1571 et seq.).)  At step

two, the ALJ found Plaintiff had the severe impairments of cervical spine, thoracic spine, and

lumbar spine degenerative disc disease; obesity; and carpal tunnel syndrome through the date last

insured.  (Id. (citing 20 C.F.R. § 404.1520(c)).)  The ALJ also noted Plaintiff had hypothyroidism

and depression but determined that these conditions were non-severe.  (AR 1091–92 (citing 20

C.F.R. § 404.1520a(d)(1)).)  At step three, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of the listed impairments

in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  (AR 1093.)

     Before proceeding to step four, based on an extensive review and summary of the record

(see AR 1094–1111), the ALJ determined that, through the date last insured, Plaintiff had the

RFC to perform:

> **Light work as defined in 20 CFR 404.1567(b).**[8]  **Specifically, the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for six hours in an eight-hour workday with unlimited sitting. She could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and was occasionally able to crawl. She was frequently able to balance, crouch, kneel, and stoop, and occasionally able to reach overhead with the right upper extremity. She was frequently able to push and/or pull, handle, finger, and feel, with her right upper extremity. The claimant was unable to perform jobs requiring oral or written communication in English language.**

(AR 1093 (citing 20 C.F.R. §§ 404.1529 and SSR 16-3p, available at 2017 WL 5180304 (Oct. 25,

2017)) (emphasis in original).)

     At step four, the ALJ found Plaintiff was unable to perform any past relevant work

---

that this is the "date last insured."

[8] Pursuant to the disability regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

through the date last insured.  (AR 1111 (citing 20 C.F.R. § 404.1565).)  The ALJ additionally noted Plaintiff has a limited education and is unable to communicate in English.  (Id. (citing 20 C.F.R. § 404.1564).)  At step five, considering Plaintiff's age, education, work experience and RFC, and the VE's testimony, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of:

(1) Garment Sorter, Dictionary of Occupational Titles ("DOT") 222.687-014, classified as light work with a specific vocational preparation ("SVP") of level 2, with approximately 80,000 full-time positions available in the national economy;

(2) Marker, DOT 209.587-034, classified as light work with an SVP of level 2, with approximately 120,000 full-time positions available in the national economy; and

(3) Cafeteria Attendant, DOT 311.677-010, classified as light work with an SVP of level 2, with approximately 150,000 full-time positions available in the national economy.

(AR 1112 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)  Therefore, the ALJ found Plaintiff was not under a disability at any time from November 1, 2008 (the alleged onset date), through March 31, 2014 (the date last insured).  (AR 1113 (citing 20 C.F.R. §§ 404.1520(g)).)

**V.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises the following issues on appeal: (1) whether the ALJ properly addressed the medical opinions; (2) whether the ALJ properly rejected Plaintiff's testimony; (3) whether the ALJ properly rejected the lay witness testimony; and (4) whether the ALJ's step five finding is supported by substantial evidence.  (ECF No. 29-1 at 6.)  The Court will address Plaintiff's arguments in turn.

**A.**      **Whether the ALJ Properly Addressed the Medical Opinions**

1.      Legal Standard

When evaluating applications filed before March 27, 2017, as here,[9] the ALJ must explain

---

[9] Because Plaintiff filed her disability claim on October 28, 2011, the ALJ was required to evaluate opinion evidence pursuant to 20 C.F.R. § 404.1527, which applies to all claims filed prior to March 27, 2017.  The Court notes the ALJ indicates he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.  (See AR 1093.)

the weight he gives to all medical source opinions. See 20 C.F.R. § 404.1527(c). There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. Id. Nevertheless, a non-examining opinion may constitute substantial evidence if it is consistent with other independent evidence in the record, and the ALJ is to resolve the conflict. See Thomas, 278 F.3d at 957; Orn, 495 F.3d at 632–33; Andrews, 53 F.3d at 1041.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id. (citing Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995)). Similarly, where a treating or examining doctor's opinion is contradicted by medical evidence, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence in the record. See Andrews, 53 F.3d at 1041. The ALJ can satisfy the "specific and legitimate" burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)). Finally, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." Bray v. Comm'r, Soc. Sec. Admin, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted); Thomas, 278 F.3d at 957.

2.    Analysis

Plaintiff argues the ALJ erred in his evaluation of the medical opinions of Drs. Devireddy,

1    Van Kirk, and Polasa.[10]  (ECF No. 29-1 at 20–22.)

2          a.      **Treating Physician Karthikeya Devireddy, M.D.**

3          On August 22, 2011, Dr. Devireddy filed a medical source statement.  Dr. Devireddy

4    indicates in his 2011 opinion the earliest date of limitations was September 21, 2010.  Dr.

5    Devireddy opined that Plaintiff could sit for fifteen minutes at one time and stand for fifteen

6    minutes at one time before needing to get up; could sit less than two hours and stand/walk less

7    than two hours in an eight-hour workday; would need to walk every fifteen minutes for three to

8    four minutes in an eight-hour workday; would need a job that allows her to shift from sitting,

9    standing, or walking due to pain, paresthesia, adverse effects of medication, muscle weakness,

10   and chronic fatigue; would need unscheduled breaks every fifteen minutes for ten minutes before

11   she could return to work; could never lift or carry less than ten pounds and rarely carry ten,

12   twenty, or fifty pounds; could occasionally look down, rarely turn her head to the left or right,

13   look up or hold her head in a static position, twist, bend/stoop, crouch/squat, climb ladders or

14   stairs; and could reach, including overhead, five percent of the time with her right arm and twenty

15   percent of the time with her left arm in an eight-hour workday.  Dr. Devireddy opined that

16   Plaintiff had significant limitations reaching, handling, or fingering: that she could grasp, turn, or

17   twist objects ten percent of the time with her right hand and twenty percent of the time with her

18   left in an eight-hour workday; and could do fine manipulations ten percent of the time with her

19   right hand and twenty percent with the left.  She did not require use of a cane.  Dr. Devireddy

20   opined that Plaintiff's impairments were likely to produce good and bad days, and that Plaintiff

21   would be absent about one day per month due to her impairments or treatment.  (AR 804–06.)

22         On December 9, 2013, Dr. Devireddy completed a second medical source statement.  Dr.

23   Devireddy opined that Plaintiff could walk one block, sit twenty minutes, and stand fifteen

24   minutes; that in an eight-hour workday, Plaintiff could sit, stand, and walk one hour each, and

25   would need to walk for ten minutes every fifteen minutes; would need to be permitted to shift

26   _____

27   [10] While Plaintiff's medical records include findings related to her alleged psychological limitations due to depression, which were also considered and discussed by the ALJ in his decision, the Court does not address the psychological findings since Plaintiff has not challenged the ALJ's finding that Plaintiff did not have a severe mental

28   impairment.

positions due to pain, paresthesia, muscle weakness and chronic fatigue; would need an unscheduled fifteen-minute break every thirty minutes; did not need to elevate her legs or use an assistive device; could never lift twenty or thirty pounds; could occasionally look down or turn head, and rarely look up or hold head in static position; and could rarely twist, stoop, crouch/squat, climb ladders or stairs.  Dr. Devireddy opined that Plaintiff had significant reaching, handling, and fingering limitations: she could grasp, turn, or twist objects twenty percent bilaterally; perform fine manipulation thirty percent bilaterally; and reach thirty percent right and fifty percent left.  Dr. Devireddy opined that Plaintiff's condition would be likely to produce good and bad days, and Plaintiff was likely to be absent more than four days per month due to impairments or treatment as of 2007.  (AR 1061–65.)

The ALJ gave Dr. Devireddy's opinions "little weight" because

> his opinions are not supported by his documented progress notes showing that in the months prior to rendering his opinions, the claimant saw him for headaches, dizziness, menstrual problems, fatigue, and arm numbness, and his physical examination findings were generally unremarkable, with the exception of noting some neck tenderness, and arm numbness, and he repeatedly noted the claimant was in no "general distress" (Exhibit 15F).  Furthermore, after 2012 the claimant's treatment became largely sporadic and did not support his opinions. Additionally, these opinions note the left upper extremity impairment, which is not supported by the treatment records.

(AR 1110 (citing AR 800–06, 1060–70; see also AR 1097–1109 (summarizing medical record, including Dr. Devireddy's treatment notes at AR 803–06, 917–18, 931–32, 934, 1066–70, 1833–37).)

Plaintiff argues the ALJ erred because Dr. Devireddy's treatment notes included "multiple abnormalities," including "multiple MRIs showing extensive degenerative disc disease"; Plaintiff also contends such abnormalities appear in the notes of "every other examining doctor in the record."  Plaintiff further argues the ALJ was required to give Dr. Devireddy's opinions more weight as a treating physician who treated Plaintiff during the period at issue (2014).  (ECF No. 29-1 at 20.)

Since there are contradictory opinions in the record, in order to reject Dr. Devireddy's opinion, the ALJ must set forth specific and legitimate reasons supported by substantial evidence

in the record.  Bayliss, 427 F.3d at 1216; Lester, 81 F.3d at 830–31.  However, it is within the province of the ALJ to determine credibility and resolve any conflicts.  Batson, 359 F.3d at 1195. An independent review of the record demonstrates substantial evidence supports the ALJ's finding that Dr. Devireddy's medical notes reflected generally normal physical examinations and objective findings.  (See AR 584–89, 912, 917, 919–25, 928–32, 934–39, 1026.) The record does not reveal diagnostic findings or objective evidence to support the level of impairment alleged. (See AR 911, 913–16 (complaints of painful neck with limited movement); AR 1027 (complaints of tenderness all over body, mainly spine area); AR 1025 (normal examination except for some erythema); AR 1023–24 (complaint of back pain but normal tone and motor strength, no contractures or bony abnormalities and normal movement of all extremities); AR 1016, 1018–19, 1021 (complaints of neck pain but no back pain, no swelling of extremities; observed with moderate distress, ambulating normally, and normal tone and motor strength).)    Incongruity between a treating physician's opinion and medical records constitutes a specific and legitimate reason for rejecting an opinion of the patient's limitations.  Tommasetti, 533 F.3d at 1041; see also 20 C.F.R. § 404.1527(c)(2) (where the ALJ finds that  "a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it will be given controlling weight).

Furthermore, the opinions of State Agency physicians Robert Estes and P. Frye support the ALJ's decision.  Dr. Estes reviewed the medical records on April 23, 2012, and opined that Plaintiff could lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk six hours cumulatively, and sit six hours total in an eight-hour workday with normal breaks.  (AR 86.)  Dr. Estes also opined Plaintiff was limited to frequent pushing and pulling and overhead reaching with the right upper extremity; and to frequent balancing, stooping, kneeling, crouching, and crawling as well as occasional climbing.  (AR 86–87.)  Dr. Estes found that Plaintiff "exhibited minimal evidence of any physical deficit.  Pain is exaggerated, . . . and imaging the only objective evidence suggesting cervical and lumbar spine degenerative disease.  Evidence of weakness is underwhelming, concluding aside from pain claimant probably does not demonstrate

a significant functional loss."  (AR 87.)  Further, Dr. Estes stated that "[t]his assessment may be generous but is believed to be appropriate as written."  (Id.)

Dr. Frye reviewed the medical records on January 4, 2013, and provided a similar opinion. (AR 122–23.)  He found that the consultative examiner gave a clearer picture of Plaintiff's overall capability, but giving her the benefit of the doubt, she would be reduced to light work with postural and some manipulative limitations.  (AR 122.)  Based on these findings, Dr. Frye affirmed Dr. Estes's RFC assessment.  (AR 125–26.)

While the contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, the ALJ accorded "significant weight" to Dr. Estes and Frye's opinions because he found they were consistent with the medical evidence record prior to the date last insured, and because Dr. Estes and Frye are familiar with SSA authority and regulations.  (AR 1110.)  Plaintiff does not challenge the ALJ's evaluation of the opinions of these doctors, or his decision to accord them "greater weight." Moreover, while Plaintiff vaguely argues that other evidence in the record supports Dr. Devireddy's opinion, it is for the ALJ to resolve the conflicts in the record and the ALJ's opinion will be upheld where, as here, evidence is subject to more than one rational interpretation.  Burch, 400 F.3d at 679.

For these reasons, the Court finds the ALJ has provided sufficient specific and legitimate reasons supported by substantial evidence in the record for according Dr. Devireddy's opinions "little weight."  Bayliss, 427 F.3d at 1216; Tommasetti, 533 F.3d at 1041; Tonapetyan, 242 F.3d at 1149; Thomas, 278 F.3d at 957.

**b.      Examining Physician Dale Van Kirk, M.D.**

On September 10, 2019, Plaintiff underwent an orthopedic consultative examination with Dr. Van Kirk.  Dr. Van Kirk opined Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally; could sit for one hour at a time, for a total of eight hours in an eight-hour workday; could stand or walk each for thirty minutes at a time, for a total of six hours in an

eight-hour workday; could stand and/or walk for six out of eight hours, with no sitting limitations; and could continuously balance, occasionally stoop and kneel, and never climb, crouch, or crawl. Dr. Van Kirk opined Plaintiff could not reach overhead at all; could occasionally reach in all other directions, handle, and push/pull; had no limitations with fingering or feeling; and she could frequently operate foot controls.  Dr. Van Kirk opined none of Plaintiff's impairments affected her hearing or vision; Plaintiff did not require a cane, wheelchair, walker, or crutches to ambulate; and she could perform activities like shopping, using public transportation, preparing simple meals and feeding herself, taking care of her personal hygiene, and could "slowly" walk a block on rough or uneven surface or climb a few steps with a handrail.  (AR 1435–40.)

On examination, Dr. Van Kirk noted Plaintiff "moans and groans, even when taking the history.  Even with the assistance of her husband, she had difficulty taking a few steps because of pain, although [Dr. Van Kirk] did not detect a limp," and Plaintiff did not bring a cane or walker with her.  Dr. Van Kirk also observed Plaintiff with a normal heel-toe gait pattern when entering and exiting the examination room and normal Romberg test, though tandem walking with one foot in front of the other was difficult because of Plaintiff's pain in the back when ambulating. (AR 1441–47.)  Notably, Dr. Van Kirk noted in his evaluation notes that Plaintiff was a "very poor historian," that it was difficult for her to cooperate during the history and physical examination, and that it was difficult to examine multiple parts of her body.  (AR 1442.)  Dr. Van Kirk diagnosed Plaintiff with (1) status post-surgical removal of a sarcoma in 2007 with residual pain in the neck area; (2) chronic cervical musculoligamentous strain/sprain, likely associated with degenerative disc disease; (3) chronic lumbosacral musculoligamentous strain/sprain, likely associated with degenerative disc disease; (4) left shoulder rotator tendonitis; possible tear of the rotator cuff; and (5) right shoulder status post arthroscopy with residual pain and stiffness.  (AR 1446.)

The ALJ gave Dr. Van Kirk's opinion "limited weight . . . as it is five years removed from the date last insured, and as of the date last insured the symptoms noted in his opinion are not supported by the record.  (AR 1110; see also AR 1097–1109 (summarizing medical record, including Dr. Van Kirk's treatment notes at AR 1435–39, 1441–46).)  Plaintiff does not address

the ALJ's reason for discounting Dr. Van Kirk's opinion based on the finding that the medical opinion related to conditions outside of the relevant disability period, and therefore waives that argument.  See Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash. (Indep. Towers), 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review . . . issues which are argued specifically and distinctly in a party's opening brief.").  Instead, Plaintiff argues the ALJ erred because Dr. Van Kirk's assessed restrictions are consistent with the medical record and Dr. Devireddy's opinion.  (ECF No. 29-1 at 21.)  This argument somewhat misses the mark.

As an initial matter, the Court notes the ALJ may accord less weight to medical opinions that do not relate to the claimant's condition during the relevant disability period.  See Ciccarelli v. Comm'r of Soc. Sec., 164 F.3d 629, at *1 (9th Cir. 1998) (quoting Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971)) (a "long line of cases" has established that a claimant must establish disability by the date last insured, and that " 'any deterioration in [his] condition subsequent to that time is, of course, irrelevant.' "); Hill v. Colvin, No. 1:14-cv-00353-JLT, 2015 WL 2358281, at *6 (E.D. Cal. May 15, 2015) (same); see also Dotson v. Astrue, No. 1:10-cv-00243 SKO, 2011 WL 1883468, at *6 (E.D. Cal. May 17, 2011) (ALJ did not err in failing to discuss physician opinion rendered a year outside of the relevant disability period, because it was deemed "stale and not time-relevant to [the claimant's] current claim of disability."); Thomas v. Berryhill, No. 1:16-cv-01337-JLT, 2018 WL 534012, at *5–6 (E.D. Cal. Jan. 24, 2018) (rejecting claimant's argument that an ALJ may not simply ignore medical records because they pre-date the onset date of disability or post-date the last insured date, and finding ALJ did not err in failing to address treating physician's opinion which predated date of onset for instant matter).

Further, the Ninth Circuit has affirmed an ALJ's discounting of a medical opinion where it was based on a medical questionnaire completed years after the relevant period and, as here, was ambiguous on its face as to whether it referred to the claimant's contemporaneous condition or her condition from the entire relevant period onwards.  See Jones v. Saul, 783 Fed. App'x 754, 755 (9th Cir. 2019).  Indeed, in upholding the ALJ's interpretation of the medical questionnaire as pertaining to the claimant's contemporaneous condition rather than the relevant period, the Ninth

Circuit expressly noted it is the ALJ's duty to resolve such ambiguities in the medical evidence. Id. (citing Tommasetti, 533 F.3d at 1041; Burch, 400 F.3d at 679).  Here, the limited amount of examination Dr. Van Kirk was able to complete, his diagnoses, and discussion of limitations are similarly all in present tense, and glaringly absent is any opinion or discussion as to which injuries may have related back to the relevant disability period.  See id.  On this record, therefore, the ALJ's determination that the evaluation related to Plaintiff's condition after the relevant period was supported; moreover, the ALJ properly fulfilled his duty to resolve such conflicts and ambiguities in the medical record.  Burch, 400 F.3d at 679; Ford, 950 F.3d at 1149; Andrews, 53 F.3d at 1039; see also 20 C.F.R. 404.1520b(b).

The reduced weight accorded to Dr. Van Kirk's opinion was also supported in light of Dr. Van Kirk's clear notes that a full examination and evaluation of Plaintiff's medical history was not possible.  Tommasetti, 533 F.3d at 1041.  Finally, to the extent Plaintiff acknowledges Dr. Van Kirk's opinion was consistent with Dr. Devireddy's opinion, the ALJ's finding that the symptoms noted in Dr. Van Kirk's opinion are not supported by the medical record for the relevant period constitutes a specific and legitimate reason to discount his opinion, as previously discussed.  Id.; Bayliss, 427 F.3d at 1216; Tonapetyan, 242 F.3d at 1149; Thomas, 278 F.3d at 957.

### c.     Treating Physician Krisknia Polasa, M.D.

On January 8, 2020, Dr. Polasa submitted a medical source statement (MSS) in which he reported his first appointment with Plaintiff was in February 2019, and he saw Plaintiff once a month thereafter.  Dr. Polasa diagnosed Plaintiff with disc herniation, lumbar radiculopathy, and cervical spinal stenosis, with a "fair" prognosis.  He opined Plaintiff could walk less than one block without rest or severe pain, and could sit for fifteen minutes and stand for ten minutes; in an eight-hour workday, Plaintiff could sit for less than one hour, stand for less than one hour, and walk for less than one hour; could rarely lift less than ten pounds; could rarely look down or look up; could occasionally turn her head right or left, and hold her head in a static position; and could rarely twist, and never stoop, crouch, or climb ladders or stairs.  Dr. Polasa opined, in her right upper extremity, Plaintiff could use her hands to grasp or twist objects one to five percent of the

time, use her fingers for fine manipulation one to five percent of the time, and use her arms for reaching, including overhead, one to five percent of the time; in her left upper extremity, she could use her hands to grasp and twist six to thirty-three percent of the time, use her fingers for fine manipulation six to thirty-three percent of the time, and use her arms for reaching including overhead six to thirty-three percent of the time.  Dr. Polasa opined Plaintiff needed a job that permitted shifting positions at will; that Plaintiff would need to take unscheduled breaks every hour for fifteen to thirty minutes; that her impairments would likely produce good days and bad days with medications; and that she would likely be absent from work more than four days per month.  Finally, Dr. Polasa noted that Plaintiff reported the identified conditions and limitations first began more than ten years prior.  (AR 1471–75.)

The ALJ gave Dr. Polasa's opinion "little weight," as it was

> unsupported by his generally unremarkable physical examination findings in the weeks prior to rendering his opinion, and more specifically his documentation of the claimant's normal ambulation. Furthermore, his opinion is remote to the date last insured.  I note that once consistent treatment resumed in 2018 and the claimant's work activity ceased the opinions were more reflective of the record, but as of the date last insured, the examining opinion at Exhibit 20F and the opinions of the state agency [are] more accurate reflections of the treatment record.

(AR 1110 (citing AR 1470–75; see also AR 1097–1109 (summarizing medical record, including Dr. Polasa's treatment notes at AR 1471–75, 1480, 1482–93)).)

Plaintiff argues the ALJ erred because Dr. Polasa "specifically related the assessed limitations back to the relevant period," and that the limitations are consistent with those assessed by Drs. Van Kirk and Devireddy.  (ECF No. 29-1 at 21–22.)  A review of the record, however, reveals that Dr. Polasa plainly reported that the date on which all of the identified limitations first began was "per patient more than 10 years [ago]."  (AR 1474.)  Nowhere in the MSS does Dr. Polasa indicate he endorses Plaintiff's reporting or otherwise opines her reported symptoms or limitations related back to the relevant period.  As such, the ALJ appropriately resolved any conflict or ambiguity in the medical record when he determined that the identified limitations were based on contemporaneous conditions rather than the relevant period, Jones, 783 Fed. App'x at 755, and that Dr. Polasa's opinion was, therefore, "remote to the date last insured."  Burch, 400

1   F.3d at 679; <u>Ford</u>, 950 F.3d at 1149.

2        Furthermore, the ALJ discounted Dr. Polasa's opinion because it was not supported by his

3   own treatment notes (AR 1108–10 (citing AR 1452–54, 1471–75, 1482–93)), which indicate

4   generally unremarkable findings.  (<u>See</u> AR 1490–93 (Nov. 20, 2019: Plaintiff complained of 3/10

5   pain at rest and 8/10 with weight bearing; she sought medication refills for low back pain with

6   tingling but no weakness or numbness; and appeared healthy and was ambulating normally, with

7   limited range of motion in right foot but normal motor strength and tone); AR 1483–89 (Dec. 31,

8   2019: Plaintiff reported same pain plus depression, but was observed to appear healthy, no

9   distress, normal ambulation, and normal motor strength and tone); AR 1482–85 (Jan. 8, 2020:

10  same pain complaints; same exam, but noted to have irregular gait and was obese; advised to

11  exercise up to 150 minutes per week of moderate activity).)  As  noted, internal inconsistencies or

12  conflict with the medical notes constitutes a specific and legitimate reason to accord less weight

13  to a medical opinion.  <u>Bray</u>, 554 F.3d at 1228; <u>Tommasetti</u>, 533 F.3d at 1041.  Finally, to the

14  extent Plaintiff argues Dr. Polasa's opinion identified limitations consistent with Dr. Devireddy's

15  opinion, the Court refers to its prior findings that the ALJ provided specific and legitimate

16  reasons to discount Dr. Devireddy's opinion that were supported by substantial evidence in the

17  medical record.  <u>Bayliss</u>, 427 F.3d at 1216; <u>Tommasetti</u>, 533 F.3d at 1041; <u>Tonapetyan</u>, 242 F.3d

18  at 1149.  The ALJ's according "little weight" to Dr. Polasa's opinion is supported for the same

19  reasons.

20        **B.    Whether the ALJ Properly Rejected Plaintiff's Testimony**

21        1.    <u>Legal Standard</u>

22        The ALJ is responsible for determining credibility,[11] resolving conflicts in medical

23  testimony, and resolving ambiguities.  <u>Andrews</u>, 53 F.3d at 1039.  A claimant's statements of

24  pain or other symptoms are not conclusive evidence of a physical or mental impairment or

25  disability.  42 U.S.C. § 423(d)(5)(A); S.S.R. 16-3p; <u>see also</u> <u>Orn</u>, 495 F.3d at 635 ("An ALJ is not

26

27  [11] S.S.R. 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p
     eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination
     of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related
28  activities."  S.S.R. 16-3p at 1-2.

required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).  "This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony."  Id. (citations and internal quotations omitted).

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.  Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039; Lingenfelter v. Astrue, 504 F.3d 1028,

1   1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.

2        Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's

3   subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

4        2.    Analysis

5        As previously noted, the ALJ concluded the medically acceptable evidence—including

6   signs, symptoms, and laboratory findings—supported the finding that Plaintiff has severe

7   impairments of cervical spine, thoracic spine, and lumbar spine degenerative disc disease;

8   obesity; and carpal tunnel syndrome through the date last insured.  (AR 1091.)  However,

9   although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the

10  ALJ determined Plaintiff's allegations regarding the intensity, persistence, and limiting effects of

11  her symptoms were not entirely consistent with or supported by the record because

> the medical evidence record shows she engaged in minimal treatment frp, approximately June of 2012 through 2018/2019.  I note the claimant's treating specialist at Stanford commented on her "haphazard follow up with multiple cancellations in the past.  She also had haphazard treatment courses with not scheduling appointments as discussed or starting medications as prescribed" (Exhibit 13F, pp. 57, 58).  Furthermore, from the date last insured until 2018, other than being noted to have pain in her hands, right worse than left (Exhibit 30F, p. 638), and 5/5 lower extremity strength in 2016 (Exhibit 30F, p. 631), the claimant's treatment history is sparse from the DLI until 2018, suggesting that her pain and symptoms were not as pronounced as the claimant has alleged.  During this time, the claimant was able to work (Exhibit 11D, pp. 7-8), which is suggesting of a greater capacity to function [than] the claimant alleges.  I note the record is largely silent on the issue of muscular atrophy, which would be expected if symptoms were as pronounced as the claimant contends over the course of time.  The claimant testified that she helped her mother to appointments and had to push her in a wheelchair at times.  [Her] mother was ultimately admitted to a hospital.  Additionally, while the record shows that surgery was recommended in 2012, as of 2019, the same provider was not recommending surgery (Exhibit 30F, p. 591) despite objective evidence suggesting some worsening (Exhibit 30F, p. 654).  Considering the gap in consistent treatment, work in the interval period, and the overall record suggesting worsening symptoms after work ceased in 2018, the opinions of the claimant's primary care providers are not found to be supported by the medical evidence record, including their own progress notes prior to or just after they rendered their opinions.  Accordingly, the examining and reviewing opinions are afforded greater weight.

28  (AR 1097, 1109–10; see also AR 1096–97 (summarizing Plaintiff's February 27, 2020 hearing

20

testimony)).)

Plaintiff disputes the ALJ's determination, on the bases that (a) the ALJ failed to identify particular findings inconsistent with any of the specific functional deficits Plaintiff described, (b) the ALJ's comment noting no muscle atrophy in the record represents an improper substitution of the ALJ's lay opinion for that of Plaintiff's treating and examining physicians, and (c) the ALJ failed to develop the record further as to Plaintiff's gaps in treatment and her work history.  (ECF No. 29-1 at 23–24.)  The Court finds these arguments unavailing.

As noted, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of her pain were inconsistent with the record.  (AR 1109.)  The ALJ noted Plaintiff testified that she was losing sensitivity in her right arm and legs and that she could not sit or stand too long, move her arm or neck, or sleep, due to pain that was at a 9/10 level, twenty-four hours per day.  (AR 1096.)  He noted Plaintiff alleged she was unable to walk for more than ten to fifteen minutes, perform household chores, or work due to constant and severe pain.  (AR 1094.)  Further, after comparing and contrasting in detail Plaintiff's subjective complaints with the clinical findings in the record (see AR 1094–1109), the ALJ also provided several reasons to discount Plaintiff's allegations of totally disabling pain.

In particular, the ALJ noted Plaintiff's engagement with minimal treatment from June 2012 through 2018/2019 and "haphazard follow up with multiple cancellations in the past . . . not scheduling appointments as discussed or starting medications as prescribed."  (AR 1109 (citing AR 886–87); see also AR 1098 (citing AR 566–67, 849–51 (noting Plaintiff did not comply with doctor's recommendations)); AR 1100 (citing AR 875–76 (did not comply with physical therapy yet)); AR 1101 (citing AR 886–87 ("haphazard follow up")); AR 1103 (citing AR 980–82 (did not follow up with physical therapy or advisement to titrate medication)); AR 1106 (citing AR 2073 (noting in 2019 Plaintiff did not follow up on 2012 surgical recommendation)).)  This constitutes a clear and convincing reason to discount symptom testimony.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony."); Burch, 400 F.3d at 681 (affirming ALJ discrediting testimony due

to lack of consistent treatment; commenting on claimant's failure to attend physical therapy, chiropractor, or do home exercises, "[t]hat [the claimant]'s pain was 'not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (internal citations omitted).  The ALJ also concluded Plaintiff's pain and symptoms were not as pronounced as alleged because of her sparse treatment history through 2018.  (AR 1109; see Burch, 400 F.3d at 681.

The ALJ noted Plaintiff's ability to work part time, and perform other activities—such as helping her mother to appointments and pushing her in a wheelchair at times—during the relevant period indicated "a greater capacity to function" than Plaintiff alleged, thus conflicting with her symptom testimony.  (AR 1109–10 (citing AR 1315–16).)  "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d at 1165); see also Molina v. Astrue, 674 F.3d 1104, 1112–13, superseded by regulation on other grounds (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009)) (holding that, even where a claimant's activities suggest some difficulty functioning, "they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); see also 20 C.F.R. § 404.1529(c)(3)(i)–(vii) (in weighing severity of symptoms, the ALJ will consider the claimant's daily activities, among other factors).

Further, the ALJ noted that, while surgery was recommended in 2012, the same provider did not recommend surgery in 2019, which he concluded also cut against a finding of debilitating symptomology.  (AR 1110 (citing AR 2064, 2127).)  The change in opinion related to surgical recommendation both demonstrates an internal inconsistency in the medical opinion which damages credibility of the provider and cuts against the purported severity of the claimant's symptoms because her treatment may be considered "conservative."  See, e.g., Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted); see also Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on

conservative treatment consisting of Vicodin, physical therapy, and an injection).

Plaintiff's argument that the ALJ was required to develop the record further as to her gaps in treatment and her work history is unpersuasive.  Notably, the ALJ in Alvarez I, as here, discounted Plaintiff's allegations of pain due to notes in the medical record that Plaintiff "disregarded [medical] recommendations and failed to keep follow-up appointments . . . [and] did not follow medication instructions" (AR 23 (June 27, 2014 decision, citing AR 851, 987)), and was able to work part time during the relevant time period (AR 19, 25 (noting Plaintiff's reported ADLs included managing her own personal care, shopping for groceries, attending church, visiting friends, watching tv, attending her children's athletic events, caring for pet birds, and caring for a five-year-old foster child from 2008–January 2014, as well as some part-time work from 2009–2011)).  Plaintiff has consistently been represented by the same counsel since the inception of her claim in 2011 (see AR 151–52), including at the first disability hearing and throughout the first appeal, and throughout the administrative process on remand and the instant appeal.  Thus, she not only had an opportunity to address the inconsistencies with her prior treatment and ADLs through her supplemental application and second disability hearing testimony, but was also well aware of the potentially problematic nature of these inconsistencies after they were highlighted by the first ALJ's decision.  For these reasons, Plaintiff's argument that the ALJ failed to develop the record in those areas is not well-taken.[12]

---

[12] Alternatively, Plaintiff appears precluded from raising this particular issue on her second appeal.  The Ninth Circuit has explained that principles of res judicata and issue preclusion may make certain original disability findings binding.  See Chavez v. Bowen, 844 F.2d 691, 694 (9th Cir. 1988) (finding, in matter in which the claimant brought a second disability claim after an adverse ruling in the first claim, "[t]he first administrative law judge's findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings.")  Here, Plaintiff did not challenge the ALJ's discounting of her testimony based on lack of medical treatment in the original case and therefore waived her challenge at that time.  Lewis, 236 F.3d at 517 n.13; see also Indep. Towers, 350 F.3d at 929 (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review . . . issues which are argued specifically and distinctly in a party's opening brief.").  Furthermore, while Plaintiff did challenge the ALJ's consideration of ADLs, this Court rejected Plaintiff's argument and affirmed the ALJ's discounting of Plaintiff's testimony, granting remand only as to the issues of Plaintiff's limitations with respect to with her right hand/arm functions, and illiteracy in English.  (AR 1208–31); Alvarez I at ECF No. 19.  Plaintiff's attempt to essentially relitigate the prior ALJ's finding which this Court affirmed, or to raise an argument that could have been raised, but was not, in her initial appeal—each discrete issues whose determination does not rely on new evidence in the record—is therefore not well-taken.  Further, the Court does not find the administration reopened the case as to this specific issue by ordered a second disability hearing "pursuant to" the terms of this Court's remand order.  See, e.g., 20 C.F.R. §§ 404.989(a)(1), (b) (allowing the Commissioner to reopen a decision if there is "good cause" to do so, as where "[n]ew and material evidence is furnished," but not "if the only reason for reopening is a change of legal interpretation or administrative

In any event, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss, 427 F.3d at 1217 (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown, 697 Fed. App'x at 549 ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record . . . [and] the ALJ provided specific, clear and convincing reasons for finding Brown's testimony regarding his symptom severity was not fully credible, including that Brown's testimony was inconsistent with his daily activities."). Neither of the aforementioned circumstances appears here. Further, the initial burden to submit evidence to establish disability lies with Plaintiff. See 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting the burden to establish disability through step four lies with the claimant, "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); see also Fair, 885 F.2d at 603 (indicating initial burden is on claimant to suggest a reason for failing to seek treatment or follow prescribed course of treatment).

Finally, the Court rejects Plaintiff's argument that the ALJ impermissibly commented the lack of reported muscle atrophy in the medical records cuts against a finding that Plaintiff's symptoms were as severe as she claimed. The Court is not persuaded that this comment reflects a "substitution of the ALJ's lay opinion" for that of Plaintiff's treating and examining physicians, but rather it is a commonsense example of a lack of objective findings in the record that would support a finding that Plaintiff was totally debilitated from 2008 to the present, as claimed, thus cutting against her credibility. Burch, 400 F.3d at 680–81; Rollins, 261 F.3d at 857. Regardless, even if this comment constitutes error, Plaintiff has not met her burden to demonstrate the error is harmless, as the other aforementioned reasons for discounting her testimony are valid. Molina, 674 F.3d at 1111 (courts may not reverse an ALJ's decision on account of an error that is ruling upon which the determination or decision was made.").

1    harmless); <u>Shinseki</u>, 556 U.S. at 409 (claimant has the burden of showing error is harmful).

2            Thus, on this record, the Court finds the ALJ made specific citations to the administrative

3    record that demonstrate clear and convincing reasons to find Plaintiff had more functional ability

4    than she alleged, thus weakening her credibility.  <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1136 (9th Cir.

5    2014); S.S.R. 16-3p at *10.  To the extent Plaintiff has suggested an alternative interpretation of

6    the evidence, this is not sufficient to establish reversible error and the Court "will not engage in

7    second-guessing."  <u>Thomas</u>, 278 F.3d at 959; <u>Ford</u>, 950 F.3d at 1154; <u>Burch</u>, 400 F.3d at 679

8    (citations omitted).  Accordingly, the Court finds the ALJ provided clear and convincing reasons

9    supported by substantial evidence for discounting Plaintiff's symptom testimony.

10           **C.      Whether the ALJ Properly Rejected the Lay Witness Testimony**

11           Plaintiff's David Aguilera, Rafael Alvarado, and Camelia Magana (Plaintiff's husband,

12   son, and friend, respectively) each submitted third party functionality statements.  (AR 260–70,

13   303–13, 322–34.)  Plaintiff argues the ALJ improperly discounted these statements because he

14   did not give germane reasons to do so as to each witness, and the statements were consistent with

15   the opinions of Drs. Devireddy, Polasa and Van Kirk.  (ECF No. 29-1 at 24–25.)

16           The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent

17   evidence that an ALJ must take into account, unless he or she expressly determines to disregard

18   such testimony and gives reasons germane to each witness for doing so."  <u>Tobeler v. Colvin</u>, 749

19   F.3d 830, 832 (9th Cir. 2014) (citations omitted); <u>see also Molina</u>, 674 F.3d at 1111.  In giving

20   "germane reasons" for disregarding a lay witness's testimony, the ALJ "should explain the weight

21   given to opinions from these sources or otherwise ensure that the discussion of the evidence in the

22   determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

23   reasoning, when such opinions may have an effect on the outcome of the case."  <u>Wilson v.</u>

24   <u>Berryhill</u>, No. 17-cv-05385-PJH, 2018 WL 6421874, at *12 (N.D. Cal. Dec. 6, 2018).  Germane

25   reasons must also be specific.  <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009).

26           In the instant matter, the ALJ expressly summarized and therefore considered the

27   testimony of Messrs. Aguilera and Alvarado, and Ms. Magana.  (AR 1094–96.)  The ALJ

28   assigned "limited weight" to this witness testimony to the extent they are "lay opinions describing

symptoms that are generally in accord with the overall record," but did not assign further weight to the opinions because "they lack objective foundation and guidance which would be relevant in evaluating the degree to which impairments impact the claimant's function."  (AR 1111 (citing AR 260–70, 303–13, 322–34).)  This is a sufficiently germane reason to discount lay testimony.[13] Bailey v. Colvin, 669 Fed. App'x. 839, 840 (9th Cir. 2016) ("The ALJ gave [the roommate's] testimony 'some weight' because it was only somewhat consistent with the evidence of record; this is a germane reason to discredit a lay witness's testimony") (citing Bayliss, 427 F.3d at 1218; Lewis, 236 F.3d at 511); see also Tobeler, 749 F.3d at 833 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)) ("[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make.").

Even if any error exists, such error was harmless.  See Tommasetti, 533 F.3d at 1038 (harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."); Molina, 674 F.3d at 1115 (error in failing to explain reasons for disregarding lay witness testimony was harmless, where reasons for rejecting symptom testimony applied equally to third-party testimony).  Here, the third-party reports were substantially similar to Plaintiff's symptom testimony, which the Court has determined the ALJ appropriately discounted based on specific clear and convincing reasons supported by substantial evidence in the record.  See Valentine, 574 F.3d at 694 (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d

---

[13] Alternatively, based on the legal authorities discussed with respect to Plaintiff's challenge to the ALJ's decision concerning her ADLs and failure to pursue treatment, Plaintiff similarly appears precluded from raising this issue on second appeal.  See Chavez, 844 F.2d at 694; 20 C.F.R. §§ 404.989.  The Courts notes the first ALJ's June 27, 2014 decision denying benefits addressed the exact same third-party statements, much like it addressed Plaintiff's symptom testimony, and discounted the statements for the same reasons asserted in the June 29, 2020 decision currently at issue (compare AR 25 with AR 1111), yet Plaintiff did not raise any challenge with respect to the lay witness testimony during her first appeal before this Court.  Accordingly, Plaintiff waived this particular challenge at that time, Lewis, 236 F.3d at 517 n.13; Indep. Towers, 350 F.3d at 929, and cannot raise the issue where the Court limited its remand order to determination of the issues of Plaintiff's limitations with respect to fingering/manipulative activities and overhead reaching with her right hand/arm, and Plaintiff's illiteracy in English.  (AR 1208–31); Alvarez I at ECF No. 19.

915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on basis that they were merely repeating the claimant's statements, where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother). Accordingly, for the same reasons previously discussed, the reported limitations were not supported by the medical treatment and opinion evidence or other evidence of Plaintiff's ADLs and work activities.

### D.    Whether the ALJ's Step Five Finding is Supported by Substantial Evidence

As previously noted, at step five, "the Commissioner has the burden to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations," which he may do either through VE testimony or by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted); Osenbrock, 240 F.3d at 1162–63 (citing Tackett v. Apfel, 180 F.3d 1094, 1100–01 (9th Cir. 1999)). Here, the ALJ used the testimony of a VE. (See AR 1147–55.)

Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. 20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988). Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

As detailed *supra*, the ALJ determined Plaintiff's RFC permitted her to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) with several limitations. (AR 1093.) The ALJ applied the aforementioned RFC to his hypothetical to the VE, and relied on the testimony of the VE that Plaintiff could perform the duties of a garment sorter, marker, and cafeteria attendant. (AR 1112.)

Plaintiff argues the ALJ erred at step five because he did not present hypothetical questions to the VE which set out all of Plaintiff's limitations and restrictions. Specifically, Plaintiff notes the ALJ failed to consider the limitations and restrictions identified by Plaintiff, the

1  lay witnesses, and the medical opinions of unspecified doctors, presumably Drs. Devireddy,

2  Polasa and Van Kirk.  (See ECF No. 29-1 at 25.)

3      The Court finds Plaintiff is merely rehashing her prior arguments that the ALJ improperly

4  discounted her testimony, the lay witness statements, and the opinions of Drs. Devireddy, Polasa

5  and Van Kirk.   Because the Court previously found the ALJ properly addressed the

6  persuasiveness of the opinions of Plaintiff's physicians and the prior administrative medical

7  findings, supported by substantial evidence; the ALJ provided clear and convincing reasons

8  supported by substantial evidence for discounting Plaintiff's allegations; and the ALJ provided

9  germane reasons for discounting the third-party statements, the ALJ was not required to

10 incorporate those limitations into the hypothetical given to the VE.  Thus, Plaintiff's argument on

11 this basis fails.   See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008)

12 (rejecting a step five argument that "simply restates" arguments about medical evidence and

13 testimony); see also Embrey, 849 F.2d at 423 (acknowledging there is no requirement that

14 testimony for which the ALJ has provided specific and legitimate reasons to discount be included

15 in the hypothetical given the VE).

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VI.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds the ALJ's decision to be supported by substantial evidence in the administrative record, and free from remandable legal error.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Luisa Alvarez.  The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated:   __**August 3, 2022**__ 

_____
UNITED STATES MAGISTRATE JUDGE